# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

TRINITY MILLER, ET AL.                                    CIVIL ACTION

VERSUS

JAMES LEBLANC, ET AL.                          NO. 21-00353-BAJ-RLB

## RULING AND ORDER

Before the Court is the **Rule 41(b) And 12(b)(6) Motion To Dismiss (Doc. 37)**, submitted by Defendants James LeBlanc, Darrel Vannoy, and Brandalynn McMullen (collectively, "Defendants"), seeking dismissal of certain claims set forth in Plaintiffs' Amended Complaint. The Motion is opposed. (Doc. 38). For reasons to follow, Defendants' Motion will be granted in part, and Plaintiffs' Eighth Amendment Claims against Defendants LeBlanc and Vannoy will be dismissed with prejudice.

## I.    BACKGROUND

### a. Alleged Facts

In this wrongful death and survival action Plaintiffs represent Brycen Miller, the son of former Louisiana State Penitentiary (LSP) inmate Michael Miller ("Miller"). Miller died in LSP custody after voluntarily ingesting a bag of heroin and methamphetamine.

The Court has already recounted most of Plaintiffs' operative allegations in its September 28, 2022 Order granting Defendants' original motion for partial dismissal of Plaintiffs' action. (*See* Doc. 31 § I(a)). That portion of the Court's September 28 Order is incorporated here. To sum up, Plaintiffs' original Complaint alleged that for years Warden Vannoy has known that LSP correctional officers ("COs") are

smuggling "drug contraband into the prison" for distribution to inmates, yet has failed to stop the problem. (Doc. 1 ¶¶ 9, 11, 12). At some point after March 2020, when LSP instituted its COVID-19 lockdown, unknown COs "smuggled methamphetamine and heroin into LSP and distributed these drugs to … Miller." (*Id.* ¶ 11). On June 20, 2020, while conducting a pat down search of Miller, Defendant CO McMullen discovered Miller's drugs—bagged—and attempted to confiscate them. (*Id.* ¶¶ 13-15). Miller grabbed the bag away from CO McMullen and swallowed it. (*Id.* ¶ 15). Rather than following LSP policy and immediately seeking medical care to avoid an overdose, CO McMullen stated to Miller that "he would be sorry for doing that," and ordered him to a disciplinary lockdown cell. (*Id.* ¶¶ 16-18). CO McMullen and other LSP COs allowed Miller to remain in the lockdown cell until he died of an overdose, never seeking medical aid *even after* they observed Miller exhibiting signs of acute distress. (Doc. 1 ¶¶ 19, 22-23, 25-28).

Plaintiffs' superseding Amended Complaint adds substantial detail regarding the roles that Defendants Warden Vannoy and Louisiana Department of Corrections and Public Safety Secretary James LeBlanc allegedly played in the development and maintenance of LSP's corrupt drug-smuggling operation. Specifically, the Amended Complaint states:

> 9. As evidenced by public records concerning prisoner deaths, recent federal drug indictments and numerous arrests by local, state and federal agencies of LSP Staff, for the last several years, Defendant Vannoy and Defendant LeBlanc have [been] aware of ongoing smuggling by LSP employees of drug contraband into LSP since at least 2018. Despite Defendants' knowledge of this systemic failure, they did not take action to correct their unconstitutional practices to properly train and supervise employees in detect [sic] and stop drug smuggling.

2

10. For instance, in 2018, at least three LSP prisoners were reported to have died from drug overdoses. In addition, that year several LSP correctional officers were arrested for smuggling synthetic marijuana, heroin, and methamphetamines into the prison.

11. In 2018, Defendant Vannoy indicated in an interview that "his two main challenges were cellphones and mojo." Defendant LeBlanc also knew about the drug smuggling problem at DOC at this time, as his spokesperson publicly indicated that there was an "uptick in drugs being smuggled into state prisons."

12. Then in 2019, the Department of Justice pursued a sweeping 22 defendant drug conspiracy indictment, which included five former correctional officers, to dismantle the "large-scale cocaine, heroin, marijuana, and methamphetamine trafficking network based in the Louisiana State Penitentiary at Angola."

13. In 2019, Defendant LeBlanc acknowledged that the extremely high turnover rate at LSP prohibits Defendant Vannoy from properly training and supervising correctional officers in curbing the drug trade. Specifically he stated that "[s]taff, as I mentioned, is part of the [contraband] problem. Hopefully, if we could settle that down, that would solve a lot of our challenges."

14. In 2019, at least four prisoners died each year of drug overdoses at LSP.

15. In March of 2020, the COVID-19 pandemic led LSP to shut its doors to outside visitors.

16. Despite great restrictions of the general public to LSP, the drug problems their [sic] continued to worsen. Public records demonstrate that at least four prisoners died of drug overdoses in 2020, and that in 2021 the number of prisoner drug related deaths jumped to fourteen.

(Doc. 35 ¶¶ 9-16 (citations omitted)).

**b. Procedural History**

Plaintiffs initiated this action on June 18, 2021, pursuing individual capacity constitutional claims against Secretary LeBlanc, Warden Vannoy, CO McMullen, and "Other Currently Unknown Defendants." (Doc. 1). Relevant here, Plaintiffs' original Complaint alleged: (1) Secretary LeBlanc and Warden Vannoy failed to protect Miller

3

from a system that resulted in inmates experiencing drug overdoses being placed in disciplinary lock-down, depriving them of acute medical care; (2) Warden Vannoy failed to supervise CO McMullen and the unnamed COs to ensure that they did not ignore inmates' requests for acute medical care, including proper treatment for drug overdoses; and (3) CO McMullen and the unnamed COs exhibited deliberate indifference to Miller's acute medical needs by placing him in lockdown after he ingested the bag of drugs, rather than seeking emergency care. (*Id.* ¶¶ 38-40).

On December 22, 2021, Defendants moved to dismiss Plaintiffs' action *in part*. (Doc. 16-1). Defendants did *not* challenge Plaintiffs' Eighth Amendment deliberate indifference claims against CO McMullen and the unknown COs, (*see id.* § C), but nonetheless argued that Plaintiffs' Eighth Amendment claims against Secretary LeBlanc and Warden Vannoy failed a qualified immunity analysis, (*see id.* § B).

On September 28, 2022, the Court granted Defendants' motion, dismissing Plaintiffs' Eighth Amendment claims against Secretary LeBlanc and Warden Vannoy. As to each claim, the Court determined that Plaintiffs' allegations did not rise to the level of "deliberate indifference." (Doc. 31 pp. 7-9). Regarding Plaintiffs' failure to protect claim, the Court explained:

> Plaintiffs' complaint is devoid of any allegation that Defendants Vannoy and Leblanc were personally aware of an "unconstitutional medical system" or the "unfettered drug trade." Moreover, the allegations in the Complaint do not state with any level of specificity how many officers have been implicated in the alleged "drug trade," whether any such officers investigated for possible drug distribution are also connected to Decedent's drug use, or whether any such officer should have provided Decedent with medical care.

(Doc. 31 pp. 7-8). Regarding Plaintiffs' failure to supervise claim, the Court found that

4

"Plaintiffs complaint does not [include] facts establishing other, similar instances, sufficient to plausibly establish a pattern of such practices." (*Id.* p. 9). Still, consistent with Federal Rule of Civil Procedure ("Rule") 15, the Court afforded Plaintiffs the opportunity to amend their Eighth Amendment claims "to cure the[se] deficiencies." (*Id.* pp. 8, 10).

On October 12, 2022, Plaintiffs timely filed their Amended Complaint. (Doc. 35). The Amended Complaint pursues the same deliberate indifference claims against CO McMullen and the unknown COs, (*id.* ¶ 47), but refocuses Plaintiffs' claims against Secretary LeBlanc and Warden Vannoy. Now, Plaintiffs' failure to protect claim assigns liability to Secretary LeBlanc and Warden Vannoy for having "failed to screen and stop the introduction of drugs at LSP" by corrupt COs, thereby "establishing and maintaining a system that they knew would result in prisoner overdoses." (*Id.* ¶ 45). Similarly, Plaintiffs' failure to supervise claim shifts its focus to Secretary LeBlanc's and Warden Vannoy's "failure to supervise and train LSP employees to screen and detect the introduction of drug contraband at LSP," which has resulted in multiple inmate deaths each year, including Miller's. (*Id.* ¶ 46).

On October 26, 2022, Defendants filed the instant **Rule 41(b) And  Rule 12(b)(6) Motion To Dismiss (Doc. 37)**. At the outset, Defendants object that Plaintiffs' refocused Eighth Amendment claims against Secretary LeBlanc and Warden Vannoy amount to a "contumacious attempt to assert new claims," and a "bait and switch" tactic that plainly violates this Court's September 28 dismissal Order. (Doc. 37-1 pp. 7-8). On this basis, Defendants demand dismissal of these claims

under Rule 41(b). (*Id.*). Additionally, Defendants argue that Plaintiffs' revised claims against Secretary LeBlanc and Warden Vannoy, even as stated, cannot withstand qualified immunity.[1] (*Id.* pp. 8-13). Plaintiffs oppose Defendants' Motion. (Doc. 38).

## II.   ANALYSIS

### a.   Rule 42(b)

Rule 41(b) permits the Court to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the federal] rules or a court order." Fed. R. Civ. P. 41(b). "[A] Rule 41(b) dismissal is appropriate where there is a clear record of delay or contumacious conduct by the plaintiff." *Bryson v. United States*, 553 F.3d 402, 403 (5th Cir. 2008) (quotation marks omitted). Typically, a Rule 41(b) dismissal follows "one or more of the following aggravating factors: (1) delay attributable to the plaintiff, not to his attorney, (2) actual prejudice to the defendant; and (3) delay caused by intentional misconduct." *Id.* at 404 (quotation marks omitted).

Here, Plaintiffs did not delay in filing their Amended Complaint. And plainly their conduct is not "contumacious"—by any definition of the word—where their amended allegations and revised claims are directly responsive to the deficiencies identified in the Court's September 28 dismissal Order. Finally, Defendants cannot show actual prejudice resulting from Plaintiffs' revised claims. Plaintiffs' original

---

[1] Finally, and strangely, Defendants urge the Court to dismiss Plaintiffs' "Fourteenth Amendment claim [sic] against LeBlanc, Vannoy, and McMullen." (Doc. 37-1 p. 13). No such claims appear in the operative Amendment Complaint. (*See* Doc. 35). Instead, Plaintiff now pursues only Eighth Amendment claims against Secretary LeBlanc, Warden Vannoy, CO McMullen, and the unknown COs, and separate Privileges and Immunities Clause claims against CO McMullen and the unknown COs. (Doc. 35 ¶¶ 45-47). Defendants do not challenge Plaintiffs' Eighth Amendment and Privileges and Immunities Clause claims against CO McMullen and the unknown COs, and the Court does not address these claims here.

complaint expressly alleged that "for the last several years, Defendant Vannoy has been unable to curb ongoing smuggling by LSP employees of drug contraband into the prison," and that "Defendant Vannoy's failure to stop ongoing smuggling by LSP employees of drug contraband into the prison is a direct cause of Mr. Miller's wrongful death." (Doc. 1 ¶¶ 9, 12). Plaintiffs' Amended Complaint merely amplifies these allegations, and pursues revised legal theories. These new allegations and theories obviously arise from the same conduct set forth in the original pleading—permitting amendment under Rule 15(c)—and Defendants cannot seriously be surprised by the new direction this action has taken. *See Flores v. Cameron Cnty., Tex.*, 92 F.3d 258, 272-73 (5th Cir. 1996) (holding that Rule 15(c) permitted plaintiff to add §1983 claim for survival damages, where plaintiff's claim related back to original claims of excessive force, failure to train, and deliberate indifference to medical needs).

In sum, Plaintiffs are the masters of their own complaint. *Cody v. Allstate Fire & Cas. Ins. Co.*, 19 F.4th 712, 715 (5th Cir. 2021). Afforded the opportunity to amend, Plaintiffs added allegations and reconfigured their legal theories in an attempt to address the deficiencies that defeated their prior claims. Nothing in Rule 41(b) prohibits Plaintiffs' tack, and, given the thrust of Plaintiffs' original allegations, it is perfectly consistent with the requirements of Rule 15(c).[2] Defendants' request for

---

[2] Courts routinely allow amendment to add new legal theories—even years after the fact—provided that the new theories relate back to the allegations of the original pleading. *E.g.*, *Rotstain, et al., v. Trustmark Nat'l Bank, et al.*, No. 09-cv-2384, 2016 WL 8216509, at *3-5 (N.D. Tex. July 27, 2016) (Godbey, J.) (permitting amendment under Rule 15(c) to allow multiple new claims where proposed claims shared the same factual basis as plaintiffs' original claim of aiding and abetting fraud). This practice is standard fare in commercial litigation seeking damages for business deals gone bad. *See id.* Plainly, it is permitted here where Plaintiffs allege serious constitutional violations involving matters of life and death.

7

dismissal under Rule 41(b) will be denied, Plaintiffs' original Eighth Amendment claims against Secretary LeBlanc and Warden Vannoy will be dismissed with prejudice due to Plaintiffs' omission of these claims from their operative Amended Complaint, and the Court will test the merits of Plaintiffs' superseding (revised) Eighth Amendment claims against Rule 12(b)(6). *See Flores*, 92 F.3d at 273.

### b. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Here, again, Secretary LeBlanc and Warden Vannoy invoke qualified immunity, thus turning the traditional Rule 12(b)(6) burden on its head, and requiring Plaintiffs—the *non-moving* parties—to "demonstrate the inapplicability of the defense."[3] *See Rogers v. Jarrett*, 63 F.4th 971, 975 (5th Cir. 2023) (quotation

---

*See Flores*, 92 F.3d at 273 (permitting amendment under Rule 15(c) to add new claims in constitutional wrongful death action: "If a plaintiff seeks to correct a technical difficulty, state a new legal theory of relief, or amplify the facts alleged in a prior complaint, then relation back is allowed." (quotation marks and alterations omitted)).

[3] The qualified immunity defense remains "the law of the land." *Jamison v. McClendon*, 476 F. Supp. 3d 386, 409 (S.D. Miss. 2020) (Reeves, J.) (reviewing the history and expansion of

marks omitted). To meet their burden—that is, "to defeat qualified immunity"—
Plaintiffs must show: "(1) that the official violated a statutory or constitutional right,
and (2) that the right was clearly established at the time of the challenged conduct."
*Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (quotation marks omitted). The
Court may "decide which of the two prongs of the qualified-immunity analysis to
tackle first." *Id.* (quotation marks omitted).

### i. Plaintiffs' failure to protect claim against Secretary LeBlanc and Warden Vannoy fails

Plaintiffs' revised Count I alleges that Defendants LeBlanc and Vannoy are
liable for establishing and maintaining a prison that failed to protect Miller from
unfettered drug trafficking by corrupt prison personnel. (Doc. 35 ¶ 45; Doc. 38 p. 7).

The Court starts its qualified immunity analysis with the "clearly established"
prong. Unquestionably, the Eighth Amendment "encompasses a right to reasonable
safety, including protection against unsafe conditions that pose an unreasonable risk
of serious damage to the inmate's future health." *Legate v. Livingston*, 822 F.3d 207,
210 (5th Cir. 2016) (quotation marks and alteration omitted). Defendants offer no

---

the qualified immunity doctrine, and calling for its elimination). But for how long? Recent
scholarship shows that the doctrine is founded on a legal fiction derived from a
reconstruction-era scrivener's error that removed a determinative 16-word clause from the
published version of 42 U.S.C. § 1983. *See* Alexander A. Reinert, *Qualified Immunity's
Flawed Foundation*, 111 CAL. L. REV. 201 (2023). At least one jurist of the U.S. Court of
Appeals for the Fifth Circuit has determined that this clause, if restored to its proper place,
"unequivocally negate[s] the original interpretive premise for qualified immunity." *See
Rogers v. Jarrett*, 63 F.4th 971, 979 (5th Cir. 2023) (Willett, J., concurring). It is not this
Court's role to cast aside qualified immunity here, particularly absent any argument from
the parties. Indeed, only the Supreme Court can definitively "overrule" the defense. *Id.* at
981. For now, the undersigned joins the call for the Supreme Court to "definitively grapple
with § 1983's enacted text and decide whether it means what it says—and what, if anything,
that means for § 1983 immunity jurisprudence." *Id.*

argument whatsoever that the "right to reasonable safety" does not protect prisoners from drug trafficking activities orchestrated by corrupt prison employees, resulting in the unimpeded flow of drugs into LSP. (*See* Doc. 37-1 § C(2); *see also* Doc. 40 pp. 4-5). Under Local Civil Rule 7(d), Defendants have waived their challenge to the clearly established prong. *E.g.*, *Buchicchio v. LeBlanc*, --- F.Supp.3d ----, 2023 WL 2027809, at *10 n.6 (M.D. La. Feb. 15, 2023) (Jackson, J.). (defendant waived defense by failing to support it with any briefing or authority: "[T]his Court has repeatedly admonished that it will not speculate on arguments that have not been advanced, or attempt to develop arguments on a party's behalf." (citing authorities)); *see also, e.g.*, *Zakora v. Chrisman*, 44 F.4th 452, 466 (6th Cir. 2022) (prison official defendants forfeited the "clearly established" prong by failing to address the issue in their appellate brief), *cert. denied*, 143 S. Ct. 2608 (2023); *Jackson v. City of Hearne, Texas*, 959 F.3d 194, 202 (5th Cir. 2020) (prisoner plaintiff forfeited the "clearly established" prong by failing "to cite any authority showing that the right was clearly established").

This leaves only whether Plaintiffs have alleged conduct establishing a violation of Miller's constitutional "right to reasonable safety." *See Legate*, 822 F.3d at 210. As alleged, Secretary LeBlanc's and Warden Vannoy's conduct is unconscionable, amounting to turning a blind eye to "ongoing smuggling by LSP employees of drug contraband into LSP since at least 2018." (Doc. 35 ¶ 9). Under different circumstances, this alleged failure to root out corrupt drug smuggling by prison *employees* almost certainly could form the basis of an actionable Eighth Amendment failure to protect claim. But not here. Why? Because Miller also alleges

10

that he voluntarily consumed the illegal drugs that caused his death. (Doc. 35 ¶ 22). Miller's voluntary act broke the causal link to LeBlanc's and Vannoy's alleged failure to root out the "large-scale cocaine, heroin, marijuana, and methamphetamine trafficking network based in the Louisiana State Penitentiary at Angola." (Doc. 35 ¶ 13). Put differently, under clear Fifth Circuit law, a prisoner cannot establish an Eighth Amendment violation "where he willingly participates in the [illicit] conduct giving rise to his injury." *Legate*, 822 F.3d at 210-11 (5th Cir. 2016) (inmate's voluntary participation in illicit communal pipe-smoking ceremonies defeated his claim that prison officials failed to protect him from contracting Hepatitis C (citing authorities)); *accord Williams v. Hampton*, 797 F.3d 276, 298 (5th Cir. 2015) (Elrod, J., Haynes, J., & Higginson, J., concurring in the judgment) ("[T]he 'superseding cause' doctrine cuts off the liability of an actor when the plaintiff's injury 'was actually brought about by a later cause of independent origin that was not foreseeable.'" (quoting *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996)). Miller's failure to protect claim against Secretary LeBlanc and Warden Vannoy will be dismissed. *E.g.*, *Legate*, 822 F.3d at 211.

### ii. Plaintiffs' failure to train claim against Secretary LeBlanc and Warden Vannoy fails

The same analysis set forth above applies to Plaintiffs' failure to supervise claim alleging that Secretary LeBlanc and Warden Vannoy failed to ensure that their subordinates screened and detected the corrupt smuggling of drugs into LSP. (Doc. 35 ¶ 46). Again, Defendants have waived the "clearly established" prong by failing to address it. And, again, Plaintiffs' claim is defeated by Miller's voluntary act, which

broke the causal link to LeBlanc's and Vannoy's alleged indifference to the lack of supervision that has allowed the LSP drug trade to flourish. *Legate*, 822 F.3d at 211.

### iii.  Amendment

Ordinarily, the Court should afford the plaintiff the chance to amend under Rule 15(a) before dismissing a claim with prejudice, unless it is clear that amendment would be futile. *See Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Here, amendment will not cure the deficiencies in Plaintiffs' revised Eighth Amendment claims against Secretary LeBlanc and Warden Vannoy. As such, the Court will dismiss these claims with prejudice, and Secretary LeBlanc and Warden Vannoy will be dismissed from this action.

## III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the Defendants' **Rule 41(b) And 12(b)(6) Motion To Dismiss (Doc. 37)** be and is hereby **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that all Eighth Amendment claims against Secretary LeBlanc and Warden Vannoy, as set forth in Plaintiffs' original Complaint (Doc. 1) and Plaintiffs' Amended Complaint (Doc. 35), be and are hereby **DISMISSED WITH PREJUDICE**, for the reasons set forth herein.

**IT IS FURTHER ORDERED** that, all claims against Secretary LeBlanc and Warden Vannoy having now been dismissed, Secretary LeBlanc and Warden Vannoy be and are hereby **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that this action be and is hereby **REFERRED**

to the Magistrate Judge for entry of an amended scheduling order setting forth a new trial date and related deadlines for Plaintiffs' remaining Eighth Amendment and Privileges and Immunities Clause claims against CO McMullen and the unknown COs.

Baton Rouge, Louisiana, this 28th day of September, 2023

_____

**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**