# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

TRINITY MILLER, ET AL.                                    CIVIL ACTION

VERSUS

JAMES LEBLANC, ET AL.                              NO. 21-00353-BAJ-RLB

## RULING AND ORDER

This is a wrongful death and survival action. Plaintiffs Janice and Jimmy Marcantel, on behalf of the minor child in their custody, have sued current and former employees of the Louisiana State Penitentiary ("LSP") for the death of Michael Miller. Now before the Court are Defendant Brandalynn McMullen's **Motion For Summary Judgment (Doc. 101)** and Defendants Chase Boitnott, Tyrone Kelly, and Christopher Wright's **Motion For Summary Judgment (Doc. 102) (collectively, the "Motions")**. The Motions are opposed. (Doc. 106). For the reasons that follow, Defendant McMullen's summary judgment motion will be denied, and Defendants Boitnott, Kelly, and Wright's summary judgment motion will be granted in part and denied in part.

## I.    BACKGROUND

### a.    Undisputed Summary Judgment Evidence

The following facts are uncontested for present purposes:

On the morning of June 20, 2020, Michael Miller was housed in the Bear 2 dormitory within LSP. (Doc. 101-2 ¶ 8, *hereinafter* "McMullen SOF"). McMullen was a corrections officer at LSP responsible for supervising the persons housed on the Bear unit. (*Id.* ¶ 7). McMullen was making her rounds of the Bear 2 dormitory when

she stopped by Miller's cell. (*Id.* ¶ 16). McMullen noticed Miller with a can of smokeless tobacco, which prompted her to conduct a "shakedown," or search, of Miller's person. (*Id.*).

During the course of this shakedown, McMullen found several items on Miller's person. (*Id.* ¶ 20). As a result, Miller made attempts to "snatch" those items from McMullen's person. (*Id.* ¶ 25).

McMullen reported this encounter to Defendant Tyrone Kelly, her supervisor. (*Id.* ¶ 38). McMullen and Kelly disciplined Miller for the confrontation, and transferred him to a "lockdown" unit, which in this case was the "Tiger" unit. (*Id.* ¶¶ 49, 54). Pursuant to prison policy, McMullen notified medical officers that Miller would be transferred to the Tiger unit. (*Id.* ¶ 51). Medical officers were asked to perform a general medical evaluation of Miller upon his transfer. (*Id.* ¶¶ 51, 54). Medical officers were at no time notified that Miller had potentially or actually ingested any items, or that Miller was under the influence of drugs. (Docs. 106-4 at p. 38, 106-5 at p. 23).

Miller was taken to the Tiger unit. (McMullen SOF ¶ 58). McMullen drafted an incident report detailing her interaction with Miller, along with a disciplinary record. (*Id.* ¶¶ 64). Medical officials examined Miller at the Tiger unit, and he passed the evaluation. (*Id.* ¶ 66).

Defendant Boitnott was assigned to the Tiger unit at the time of Miller's transfer. (Doc. 102-4 at p. 62). Defendant Wright was assigned to the Tiger unit for the night shift. (*Id.* at 63). Neither were informed that Miller had potentially or

actually ingested any narcotics. (Doc. 106-4 at p. 47).

In the early morning of June 21, 2020, an emergency beeper was activated on the Tiger unit. (McMullen SOF ¶ 74). McMullen and Kelly responded to the emergency beeper and discovered Miller dead in his cell. (*Id.* ¶¶ 75, 82-83). McMullen documented the event in another incident report. (*Id.* ¶ 85). An autopsy of Miller's body was conducted, which ascribed the cause of death to "Mixed drug (fentanyl and heroin) toxicity." (*Id.* ¶ 90). The autopsy found "300 mL of tan-brown fluid with a scant amount of partially digested food fragments" in Miller's digestive tract. (Doc. 106-3 at 83).

### b. Disputed Summary Judgment Evidence

The parties dispute the specific events that occurred within the general timeline delineated above. Each side's assertions are supported by admissible summary judgment evidence, except where indicated.

Namely, Defendants assert that:

The materials found on Miller's person during McMullen's shakedown were various slips of paper. (McMullen SOF ¶¶ 20, 23). Miller was unsuccessful in "snatching" the papers out of McMullen's hand. (*Id.* ¶ 26). During the search, McMullen peripherally saw Miller attempt to place something in his mouth. (*Id.* ¶ 27). McMullen immediately asked whether Miller had placed something in his mouth, and he refused to answer. (*Id.* ¶ 29). When Miller did answer, he stated that he did not put anything in his mouth. (*Id.* ¶ 32). McMullen was unable to determine whether Miller put something in his mouth. (*Id.* ¶ 30).

McMullen did not observe any medical issues involving Miller on June 20,

2020, and did not believe him to be intoxicated. (*Id.* ¶¶ 34, 36). McMullen notified Kelly that Miller might have placed something in his mouth during her search. (*Id.* ¶ 47). Kelly then conducted his own search of Miller. (*Id.* ¶ 43). McMullen and Kelly asked Miller if he placed something in his mouth, and Miller denied doing so. (*Id.* ¶ 48).

Miller did not possess drugs while under McMullen's supervision on June 20, 2020, and McMullen and Kelly did not find any drugs on Miller on this day. (*Id.* ¶¶ 92, 94). McMullen further asserts that Miller did not ingest a bag of drugs in her presence. (*Id.* ¶ 95). However, McMullen provided no citation for this factual assertion, and so the Court will not consider it.[1] That being said, Defendants assert that Miller denied ingesting anything on June 20, 2020. (*Id.* ¶ 98). This final factual assertion is more specifically based on McMullen's testimony that Miller denied ingesting anything while in his cell, and while in Kelly's office. (*Id.* (citing Doc. 106-4 at 35, 36, 38, 39, 47)).

Plaintiffs offer a different sequence of events.

According to Plaintiffs, paper was not the only thing McMullen found during Miller's shakedown. (Doc. 106-19 ¶ 20, *hereinafter* "McMullen Opp SOF"). According to the sworn declaration of David Fruge, Miller's cellmate in the Bear 2 unit on June 20, 2020, when McMullen confronted Miller, it was evident that the latter had been

---

[1] Local Civil Rule 56 states that a motion for summary judgment must be supported by a statement of material facts, and that the facts asserted in this statement must be supported by a record citation. The Local Rules of the Court carry the force of law. *Deggs v. Aptim Maint., LLC*, No. 19-cv-00406, 2022 WL 2351922, at *1 n.2 (M.D. La. June 29, 2022) (Jackson, J.).

doing drugs. (Doc. 106-9 at 1). Miller had been using either meth or heroin directly prior to McMullen's appearance, and Miller's eyes were bloodshot. (*Id.*). The description of Miller's eyes is confirmed by McMullen's incident report from the interaction, where McMullen herself described Miller as possessing "bloodshot, red glassy eyes." (Doc. 101-5 at 2).

McMullen patted Miller down, and found a clear bag containing more drugs. (Doc. 106-9 at 2). Upon finding this bag, McMullen held it in her hand and questioned Miller as to its contents. (*Id.*). Miller then grabbed the bag out of McMullen's hand, and swallowed it. (*Id.*). After he had done so, Fruge attests that he heard McMullen say "[y]ou're going to regret that." (*Id.*).

McMullen did not question Miller as to what he swallowed while they were in his cell, or call for medical assistance. (*Id.*). Fruge saw Miller's corpse taken out of the prison facility the next morning. (*Id.*). Fruge then asked Defendant Boitnott about what had happened. Boitnott told Fruge that he had seen Miller in the shower of the Tiger unit, where Miller exhibited signs of an overdose. (*Id.* at 3). Boitnott stated that "he tried to get Michael to his cell so that he could put a fan on him to cool him down." (*Id.* at 4). Boitnott also stated that he actually called medical personnel for Miller, but that medical never came. (*Id.*). In Boitnott's words, "it didn't have to happen like that." (*Id.*).

As to McMullen's interactions with Kelly, Plaintiffs note that the testimonies of McMullen and Kelly are in direct conflict. Kelly testified that he did not meet with Miller and McMullen prior to the former's transfer to the Tiger unit, and that he did

not remember performing any search of Miller whatsoever. (Doc. 106-5 at pp. 18-20). Kelly further testified that at no point was he notified that Miller might have put something in his mouth. (*Id.* at p. 19). According to Kelly, Miller was placed in the showers of Tiger unit as a matter of course, and not in response to any sort of medical situation—although it was in those same showers that Miller was to receive the standard medical screening for transferred inmates. (*Id.*).

## II. STATEMENT OF LAW

### a. Standard

Federal Rule of Civil Procedure ("Rule") 56(a) provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. If the record, viewed in this light, could not lead a rational trier of fact to find for the nonmovant, summary judgment is proper. On the other hand, if the factfinder could reasonably find in the nonmovant's favor, then summary judgment is improper.

> Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that a better course would be to proceed to a full trial.

*Kunin v. Feofanov*, 69 F.3d 59, 61–62 (5th Cir. 1995) (quotation marks, alterations, and citations omitted); *see also Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (same); *accord Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994) ("The Supreme Court has recognized that, even in the absence of a factual dispute, a

district court has the power to 'deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Importantly, when conducting the summary judgment analysis, the Court is prohibited from evaluating the credibility of the witnesses, weighing the evidence, or resolving factual disputes. *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021). Put differently, the Court may *not* credit certain witness testimony over other evidence: "By choosing which testimony to credit and which to discard, a court improperly weighs the evidence and resolves disputed issues in favor of the moving party. Doing so is tantamount to making a credibility determination, and—at this summary judgment stage—a court may make no credibility determinations." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (quotation marks, alterations, and citations omitted).

### b. Eighth Amendment

The Eighth Amendment forbids cruel and unusual punishments. This prohibition includes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Put differently:

> A prison official has violated the Eighth Amendment when he 1) shows a subjective deliberate indifference to 2) conditions posing a substantial risk of serious harm to the inmate. *Farmer*, 511 U.S. at 833-34. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* at 842.

*Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004).

The Fifth Circuit cautions that "deliberate indifference" is "a demanding standard." *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir. 2019). For deliberate indifference:

> Negligence or inadvertence is not enough. A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. An inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.
>
> Rather, the inmate must show that officials acted with malicious intent—that is, with knowledge that they were withholding medically necessary care. The plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

*Id.* at 219–20 (quotations marks and citations omitted).

Still, despite being a high bar, deliberate indifference is *not* an impossible one. To the point, an inmate need not die or even suffer "serious illness" to establish deliberate indifference. *Gates*, 376 F.3d at 333 ("It is also important to note that the inmate need not show that death or serious illness has occurred." (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).

### c. Qualified Immunity

"The doctrine of qualified immunity shields a government official performing discretionary functions from civil damages liability, provided his complained of actions meet the test of 'objective legal reasonableness.'" *Staten v. Tatom*, 465 F. App'x 353, 357 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). "We assess the 'objective reasonableness' of an officer's actions in light of the particular circumstances and the legal rules 'clearly established' at the time the

officer's actions were taken." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

In practice, the two-pronged test for qualified immunity asks (1) "whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right," and (2) "whether the right was 'clearly established.'" *Cunningham v. Castloo*, 983 F.3d 185, 190-91 (5th Cir. 2020). A court may analyze these prongs in either order, and resolve the case on a single prong. *Id.* at 190.

Critically, "[a] qualified immunity defense alters the usual summary judgment burden of proof," because "[o]nce a government official asserts [qualified immunity], the burden shifts to the plaintiff to rebut the defense." *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) (quotation marks omitted); *see also Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) ("Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised."). Still, however, "all inferences are drawn in the plaintiff's favor." *Bourne*, 921 F.3d at 490 (quotation marks and alterations omitted).

## III.  ANALYSIS

Applying this law to the facts at hand, the Court finds the following with respect to Plaintiffs' Eighth Amendment claims against each Defendant, and with respect to each Defendant's qualified immunity defense.

### a.  Brandalynn McMullen

#### i.  Eighth Amendment

Defendant McMullen spends much of her resources on the issue of whether

Miller's voluntary act of ingesting narcotics prevents any subsequent Eighth Amendment violation *ab initio*. (Doc. 101-1 at 14). The Court has previously rejected this line of argument, (Doc. 104), for being overbroad, illogical, and unsupported by the law. The Court does so once more here.

The crux of McMullen's legal theory rests on an erroneous interpretation of *Legate v. Livingston*. 822 F.3d 207, 209 (5th Cir. 2016). According to McMullen, *Legate* categorically forbids Eighth Amendment violations that stem from a plaintiff's voluntary conduct. (Doc. 101-1 at 14).

This conclusion simply misstates *Legate's* holding. The plaintiff there sued the Texas Department of Criminal Justice ("TDCJ") for violations to his Eighth Amendment rights based on TDCJ's failure to protect him from contracting communicable diseases, including Hepatitis C. *Legate*, 822 F.3d at 209. Plaintiff claimed to have contracted Hepatitis C through his participation in a communal pipe-smoking ceremony, which was an allowed religious practice for incarcerated Native Americans. *Id*. The *Legate* court stated that the Eighth Amendment "does not address injury caused by an inmate's voluntary acts of this nature." *Id*. at 211. In other words, incarcerated persons may not bring Eighth Amendment claims based on, specifically, prison officials' failure to prevent those persons from performing certain voluntary acts that carry inherent risks, such as volunteering for a certain job, participating in a religious ceremony, or playing softball, in and of themselves. *Id*.

McMullen's application of the above to the present case relies on a fundamental misunderstanding of the nature of Plaintiffs' claims here. Plaintiffs are *not* bringing

an Eighth Amendment claim for McMullen's failure to prevent Miller from swallowing a bag of narcotics. (*See* Doc. 77). They *are* bringing a claim for McMullen's alleged failure to take appropriate action after this event occurred. For *Legate* to apply as McMullen contends it does, the Fifth Circuit would have had to hold that the plaintiff was not entitled to bring any Eighth Amendment claim for any failure to treat his Hepatitis C. For reasons that are obvious but are nonetheless explained below, the Fifth Circuit did not do so. *See Legate*, 822 F.3d at 210-211.

The Fifth Circuit did not forbid all Eighth Amendment claims stemming from voluntary conduct for a multitude of reasons—not the least of which is that such a holding would contradict its jurisprudence on suicide. *See Arenas v. Calhoun*, 922 F.3d 616, 621 (5th Cir. 2019) ("[s]uicide is an objectively serious harm implicating the state's duty to provide adequate medical care."). To this point, in *Grogan v. Kumar*, the Fifth Circuit reversed a district court's grant of summary judgment to defendant prison officials for plaintiff's Eighth Amendment claims when those claims were based on defendants' indifference to plaintiff's physical safety after he had attempted suicide through drug overdose. 873 F.3d 273, 276-280 (5th Cir. 2017). The Fifth Circuit has held similarly in cases involving pretrial detention, *e.g. Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 396 (5th Cir. 2000), which involve "the same duty. . . to provide. . . basic human needs, including medical care and protection from harm." *Id*. at 393 (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996)). In addition, such a holding would forestall Eighth Amendment claims in such a way as to cripple common sense. (Doc. 104 at 6 (McMullen's position, taken to its

logical conclusion, would allow the State to decline to offer medical care to incarcerated persons (1) injured in fights they provoke, (2) that contract diabetes on account of their diet, and (3) who experience work-place injuries for jobs they request)).

Having dispatched with McMullen's talismanic application of *Legate*, the Court will analyze her conduct on June 20, 2020, as described by the summary judgment evidence, for an Eighth Amendment violation.

There are genuine, material fact issues that preclude summary judgment in favor of McMullen as to Plaintiffs' Eighth Amendment claims. Again, the Eighth Amendment standard has an objective and a subjective component. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). First, Plaintiffs must prove that there was an "objective exposure to a substantial risk of serious harm." *Id.* at 345. Then, Plaintiffs must show that McMullen "disregard[ed] that risk by failing to take reasonable measures to abate it." *Id.* at 346.

Plaintiffs have submitted evidence that potentially satisfies both prongs. First, there are genuine disputes as to whether Miller swallowed a bag of narcotics. If the sworn statement of Fruge is to be believed, Miller did so. It is evident, and McMullen does not contest, that a person swallowing a bag of narcotics faces an objective exposure to a substantial risk of serious harm—that serious harm being overdose, or, as occurred here, death.

The second prong of the Eighth Amendment analysis is likewise satisfied for present purposes. Fruge avers that he saw McMullen witness Miller swallow the bag

of narcotics, and that McMullen then told Miller, "[y]ou're going to regret that." (Doc. 106-9). McMullen has since acknowledged that in situations involving an incarcerated person swallowing a bag of narcotics, medical personnel are to be immediately notified. (Doc. 106-4 at 23). Plaintiffs have asserted that McMullen told no one that Miller swallowed a bag of narcotics, or that Miller exhibited symptoms of drug use prior to his swallowing of the bag, and their assertions are backed by competent summary judgment evidence. If a jury were to credit Plaintiffs' evidence, McMullen could be found liable under the Eighth Amendment for disregarding the known, substantial risk that Miller would overdose and/or die by failing to take reasonable measures to abate it—which, in this case, would have been to immediately notify medical personnel. McMullen contests Fruge's account, but resolving Plaintiffs' claims against McMullen on summary judgment would be improper when the evidence before the Court is such a "classic 'he said, she said' swearing match," *Faulkenbery v. Lee*, 307 F. App'x 813, 814 (5th Cir. 2009), and the Court will not do so.

McMullen may not avoid this holding by noting that she informed medical personnel that Miller would be transferred to Tiger unit, nor by her alleged questioning of Miller as to whether he ingested anything. Plaintiffs, through the sworn declaration of Fruge and the deposition of Kelly, assert that McMullen never questioned Miller as to what he ingested. McMullen claims that she questioned Miller in his cell, and in Kelly's office. Fruge swears that McMullen did not question Miller in his cell, (Doc. 101-5 at 2), and Kelly testified that McMullen and Miller were never

in his office, (Doc. 106-5 at 18-20). Further, notifying prison medical personnel that Miller would be transferred, which triggers an automatic medical screening, without providing those medical personnel the *essential* information that Miller had ingested a bag of narcotics, or that Miller was suspected to be under the influence of drugs, is an objectively unreasonable action to take in light of the circumstances and McMullen's own knowledge. (Doc. 106-4 at 22-23).

### ii. Qualified Immunity

Given the Court's conclusion above, the only prong of the qualified immunity analysis that bears inspection is the second, or that McMullen's actions violated Miller's "clearly established" rights. *Cunningham*, 983 F.3d at 191. "[A] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Melton v. Phillips*, 875 F.3d 256, 265 (5th Cir. 2017) (en banc).

McMullen argues that, because of Fifth Circuit cases like *Legate*, *Estate of Allison v. Wansley*, 524 F. App'x 963 (5th Cir. 2013) (per curiam), and *Trevino v. Hinz*, 751 F. App'x 551 (5th Cir. 2018), there was no clearly established precedent requiring her to alert medical officials to Miller having ingested a bag of narcotics. (Doc. 101-1 at p. 18). Each of the cited cases miss the mark. *Legate* is not relevant to the present case for reasons described above. *Trevino* is not analogous to McMullen's inaction because the facts are wholly inapposite—in *Trevino* the officers were unaware that decedent had ingested narcotics, 751 F. App'x at 556, whereas here Plaintiffs allege that

McMullen saw Miller do so, (Doc. 106-9 at 2).[2]

*Wansley* involved a decedent who mixed alcohol and prescription drugs, was placed in jail, and monitored throughout the night. 524 F. App'x at 971. The Fifth Circuit opined that because defendants constantly monitored decedent's medical condition, through affirmative acts like rousing her to take her medication and to speak with her husband, they were entitled to qualified immunity. *Id.* The Fifth Circuit specifically noted that defendants were unaware of decedent taking an unusually large amount of prescription medication, and that defendants were under the reasonable impression that decedent was merely intoxicated. *Id.* Again, those facts materially differ from those in the case at bar, where it is alleged that McMullen had reason to believe that Miller was using narcotics, (Doc. 101-5 at 2), and actually witnessed Miller ingest a bag full of said narcotics.

The Court finds the Fifth Circuit's decision in *Sims v. Griffin*, 35 F.4th 945 (5th Cir. 2022), to be relevant here. There, the Fifth Circuit held that the jailed decedent had clearly established rights that were violated when defendants allegedly "refused to treat [decedent], ignored his cries for help, and overall evinced a wanton disregard for [decedent's] serious medical needs." *Id.* at 952. Although *Sims* was decided after the facts alleged in Plaintiffs' Complaint, it explicitly based its holding that defendants violated decedent's clearly established rights on *Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006) (per curiam), which was decided well before 2020. *Sims*, 35 F.4th

---

[2] McMullen cites to *Tamez v. Manthey*, 589 F.3d 764 (5th Cir. 2009), for the same conclusion. For the same factual differences, i.e. that defendants in *Tamez* did not know that decedent ingested a bag of narcotics, the Court finds the case irrelevant to the present dispute.

at 951. Decedent in *Sims*, as here, ingested a bag containing narcotics. *Id.* at 952. Defendants there, as here, knew that decedent ingested such a bag. *Id.* Further, decedent there, as here, exhibited signs of drug use and/or overdose. *Id.* Additionally, defendants there, as here, (Doc. 106-4 at 23), knew that medical personnel should have been called for a drug overdose and/or for the decedent ingesting a bag of narcotics. *Sims*, 35 F.4th at 952. Finally, defendants there, again as is alleged here, did not alert medical personnel to the drug consumption or potential overdose. *Id.*

The Fifth Circuit's decision in *Sims* is neither a one-off, *Ford v. Anderson Cnty., Texas*, 102 F.4th 292, 312 (5th Cir. 2024) ("[t]here is ample case law in this circuit indicating that denying or unreasonably delaying medical treatment to someone in need of immediate medical assistance constitutes deliberate indifference"), nor an anomaly. *See, e.g., Thomas v. City of Harrisburg*, 88 F.4th 275, 285 (3d Cir. 2023), *cert. denied sub nom. Foose v. Thomas*, No. 23-1108, 2024 WL 4426554 (U.S. Oct. 7, 2024), and *cert. denied sub nom. Kinsinger v. Thomas*, No. 23-1204, 2024 WL 4426555 (U.S. Oct. 7, 2024) (it is "obvious" that "when an officer is aware of the oral ingestion of narcotics by an arrestee under circumstances suggesting the amount consumed was sufficiently large that it posed a substantial risk to health or a risk of death, that officer must take reasonable steps to render medical care"); *Border v. Trumbull Cnty. Bd. of Comm'rs*, 414 F. App'x 831, 839 (6th Cir. 2011) (jail official denied qualified immunity when he was aware of decedent's intoxication and drug use and requested that medical personnel treat decedent's minor facial wound, but did not inform said medical personnel of decedent's drug use); *Bradway v. Town of Southampton*, 826 F.

Supp. 2d 458, 475 (E.D.N.Y. 2011) (court denied defendants qualified immunity when they were allegedly aware that decedent had ingested a large quantity of cocaine that would pose a serious or life-threatening danger to his health yet failed to immediately seek medical attention because, in such a case, defendants' actions would be objectively unreasonable).

As in each of these cases, Plaintiffs have made factual allegations, supported by competent summary judgment evidence, that McMullen observed Miller ingest a bag of narcotics, knew that in such a situation she was required to call medical personnel, (Doc. 106-4 at 23), saw that Miller displayed signs of drug use, and yet failed to provide the essential information to medical personnel. As such, the Court determines that the applicability of McMullen's qualified immunity defense should be determined by the jury, given the clearly established law at the time of Miller's death.

In the alternative and, assuming *arguendo* that Miller's rights were not clearly established by law, the Court once more finds, (Doc. 104 at 7), for the reasons described above, that material issues of fact preclude qualified immunity in favor of McMullen, as a jury could find that her conduct was "obviously unconstitutional." *Sims*, 35 F.4th at 951.

### b. Chase Boitnott

### i. Eighth Amendment

According to the declaration of Fruge, Boitnott saw Miller in the Tiger unit showers, identified that Miller was in the throes of a drug overdose, moved him to a cooler area to mitigate the risk of his overheating, and called medical personnel to

the scene to render medical aid. (Doc. 106-9). Despite Boitnott allegedly calling medical personnel to administer to Miller, no one showed up. (*Id.*).

The question before the Court is whether these allegations make out a possible Eighth Amendment violation. The Court finds that they do.

Here, there was an objective risk that Miller would suffer serious harm via drug overdose through his use and alleged ingestion of narcotics—that is a given. The objective component of the Eighth Amendment analysis is therefore satisfied. The subjective component to the Eighth Amendment is also satisfied, for present purposes, because Plaintiffs have put forward evidence that Boitnott was aware that Miller was exhibiting symptoms of an overdose during the afternoon of June 20, 2020, and that his medical situation was potentially life-threatening. (*See* Doc. 106-9). Boitnott allegedly recognized the gravity of the situation and called medical personnel to administer to Miller. (*Id.* at 4). Were the story to end here, no Eighth Amendment claim would lie against Boitnott, since he would have taken "reasonable measures" to abate the risk to Miller's health. *Gobert*, 463 F.3d at 346. However, Fruge went on to state that Boitnott informed him that despite the call, no medical personnel ever arrived to check on Miller. (Doc. 106-9 at 4). Notwithstanding this, Boitnott left his shift at 5:30 P.M. as usual, and did not follow up with medical personnel or otherwise inform his coworkers of Miller's medical situation. (Doc. 106-6 at 26).

The Court finds that a reasonable juror could, in these circumstances, conclude that Boitnott's failure to follow-up or otherwise notify anyone as to Miller's suspected

overdose was not a reasonable measure to abate the risk to Miller's health and safety.

## ii. Qualified Immunity

Boitnott, like other Defendants, raised a qualified immunity defense. Similar to other Defendants, Boitnott's defense relies heavily on an erroneous reading of *Legate*. The Court will not repeat its prior analysis—suffice it to say the Court disagrees with Boitnott's analysis of *Legate* and offers it no credence here.

Moving past this issue, and given the Court's conclusions as to Plaintiffs' Eighth Amendment claim, the Court must now determine whether Miller's rights were clearly established at the time of the possible violation. The Court finds that they were, based primarily on the analysis provided above. It was clearly established on June 20, 2020, that conduct evincing a "wanton disregard for any serious medical needs" that stem from an incarcerated person suffering from a known malady violates that person's Eight Amendment rights. *Sims*, 35 F.4th at 951 (quoting Easter, 467 F.3d at 465). Reasonable jurors could conclude that Boitnott "acted similarly to the prison official in *Easter*." *Id.* As in *Sims*, there are material factual disputes that Boitnott knew or suspected that Miller had used narcotics, was in the midst of an overdose, was exhibiting troubling physical symptoms that involved deterioration from the time he was brought to the Tiger unit to when Boitnott allegedly saw him in the showers, that Boitnott realized the gravity of the situation, and that despite all these objective indications Boitnott did not follow up on his call to LSP medical personnel or otherwise inform his coworkers. (Docs. 106-6 at 26, 106-9). In other words, a reasonable jury could find that Boitnott's conduct "overall evinced a wanton disregard for [Miller's] serious medical needs." *See Sims*, 35 F.4th at 951. The Court

therefore concludes that fact issues preclude summary judgment in favor of Boitnott, and will decline to dismiss Plaintiffs' claims at this stage.

### c. Tyrone Kelly

Plaintiffs' claims against Kelly are based on the conclusion that a reasonable juror could, given the evidence submitted, conclude that he knew Miller had swallowed narcotics and yet failed to investigate or obtain medical treatment for him. (Doc. 106 at 22). The evidence in support of Kelly possessing such knowledge is comprised entirely of McMullen's deposition. Kelly himself denied being informed that Miller might have ingested narcotics or that Miller was under the influence of narcotics. (Doc. 106-5 at 31, 34). Plaintiffs also cite to an investigative report prepared by Major Dupuis after Miller's death for the assertion that Kelly was the one to place Miller in the Tiger unit showers, (*id.* at 8), but the investigative report does not provide this information. (*See* Doc. 102-4 at 2).

Accordingly, Plaintiffs' claims against Kelly rest primarily on McMullen's deposition testimony. The specific portion of the testimony weighing in Plaintiffs' favor is that McMullen averred that she told Kelly: "[Miller] also put something in his mouth. I don't know what it was. He won't tell me what it is." (Doc. 106-4 at 36). This, according to McMullen, prompted Kelly to ask Miller what he put in his mouth, questioning which Miller refused to answer. (*Id.*). Kelly then allegedly brought Miller to the Tiger unit. (*Id.*). Additionally, there is evidence that Miller was exhibiting signs of drug use both before and after Kelly interacted with him. (Docs. 102-4 at 2 (Miller arrived on Tiger unit "intoxicated"), 106-9 at 1 (Miller's eyes were "bloodshot")).

Even construing the above facts in the light most favorable to Plaintiffs, and

even if one entirely discounts Kelly's deposition, there is no indication that Kelly was deliberately indifferent to a serious risk to Miller's health and safety. Critically, there is no fact that establishes Kelly's knowledge of Miller having ingested narcotics, like McMullen, and no facts establishing that Kelly witnessed or identified Miller to be in the throes of a dangerous overdose, like Boitnott. It is simply too great a leap to charge Kelly with knowledge of Miller having ingested a dangerous amount of drugs based on McMullen telling him that Miller put "something" in his mouth, even when paired with Miller's allegedly bloodshot eyes. *See Tamez*, 589 F.3d at 771 (deliberate indifference not found when decedent exhibited maximally dilated pupils but denied drug use). The description of Miller as having arrived to the Tiger unit "intoxicated," standing alone, does not move the needle either. *See Roberts v. Lessard*, 841 F. App'x 691, 694 (5th Cir. 2021) (per curiam) (Eighth Amendment claim not found against defendants who attributed plaintiff's symptoms to general intoxication from synthetic marijuana).

Absent Kelly's "aware[ness] of facts from which the inference could be drawn that substantial risk of serious harm exists," *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (in this case, that Kelly could have inferred that Miller was at risk of an overdose), no Eighth Amendment claim can lie against him. The Court finds that Plaintiffs have not provided evidence that could lead a reasonable juror to find that Kelly was aware of facts that would support such an inference, and therefore concludes that Plaintiffs' claims against Kelly must be dismissed.

Because the Court concludes that Plaintiffs have failed to bring a colorable

Eighth Amendment claim against Defendant Kelly, the Court does not address his qualified immunity defense.

### d. Christopher Wright

Plaintiffs' claims against Wright are based solely on his alleged failure to perform safety checks on Miller during his night shift on the Tiger unit. (Doc. 106 at 23). Plaintiffs acknowledge that Wright was not informed that Miller had ingested narcotics, (*id.*), but say that Wright nonetheless was deliberately indifferent to his health and safety through failing to conduct his rounds as mandated by LSP policy. (Doc. 106 at 24).

Plaintiffs make out a case for Wright's negligence, even gross negligence, but fail to present evidence that supports a characterization of Wright's acts as being "deliberately indifferent" to Miller's health and safety. There is no evidence that Wright was aware or informed of any objective risk of substantial injury to Miller during the night of June 20, 2020, and the morning of June 21, 2020, and so his alleged failure to perform his rounds as he ought does not rise to the "extremely high standard" of deliberate indifference. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see Est. of Munoz by Ruelas v. Ford*, 402 F. Supp. 3d 344, 354 (E.D. Tex. 2019) (alleged failure to check on inmates, standing alone and without factual allegations as to the risks this failure creates, was not a cognizable Eighth Amendment claim). Moreover, violations to prison policy, standing alone, are "insufficient to set forth a claim of a constitutional violation." *Guiden v. Wilson*, 344 F. App'x 980, 981 (5th Cir. 2009); *see Payne v. Collins*, 986 F. Supp. 1036, 1062 (E.D. Tex. 1997) (showing no more than "the breach of a prison rule or regulation. . .

establishes no Eighth Amendment violation.").

Because the Court concludes that Plaintiffs have failed to bring a colorable Eighth Amendment claim against Defendant Wright, the Court does not address his qualified immunity defense.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Brandalynn McMullen's **Motion For Summary Judgment (Doc. 101)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Christopher Wright, Chase Boitnott, and Tyrone Kelly's **Motion For Summary Judgment (Doc. 102)** be and is hereby **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims against Defendants Wright and Kelly are hereby **DISMISSED WITH PREJUDICE**. Plaintiffs' claims against Defendant Boitnott remain pending.

Baton Rouge, Louisiana, this 17th day of December, 2024

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**